**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JAMES O. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 03-1030 |
| v. | ) | (EGS) |
| | ) | |
| JOHN ASHCROFT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is defendants' motion to dismiss all claims asserted in the complaint except two Title VII and/or Rehabilitation Act claims: (1) Plaintiff's claim concerning his non-selection for promotion to GS-9 in June of 1998; and (2) Plaintiff's claim concerning the denial of several hours of overtime in August of 1998. Because the Court is persuaded that the remainder of plaintiff's claims are deficient for failure to state an adverse employment action and/or failure to exhaust administrative remedies, the Court will **GRANT** defendant's motion.

**I.   BACKGROUND**

Plaintiff James Bolden is a former employee of the United States Marshal Service ("USMS"). On August 11, 1998, plaintiff filed a formal administrative Equal Employment Opportunity ("EEO") complaint against the USMS pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 ("Title VII"), and Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791

1

("Rehab Act").  Plaintiff alleged discriminatory employment practices based upon race (black), sex (male), and disability (left side paralysis).  The subsequent administrative proceedings addressed the following four allegations:

> a) in June 1998, [plaintiff] did not receive a career promotion to the GS-9 level;
>
> b) on June 25, 1998 [plaintiff's] request to attend ECS[1] Certifying Officer Training was denied;
>
> c) on July 6, 1998, [plaintiff] was placed on a 120-day performance plan; and
>
> d) on August 28, 1998 [plaintiff] was denied requested overtime.

*See* Defs.'Ex. 1, ALJ Decision at 2.

On August 28, 2001, after receiving the various motions submitted by the parties, Administrative Judge Richard Schneider issued a decision granting summary judgment in favor of the Agency.  *See id.* at 6 (concluding that "Complainant has not proffered evidence from which I could conclude that the Agency discriminated against him on the basis of any protected class"). On January 30, 2003, following Mr. Bolden's timely appeal, the Equal Employment Opportunity Commission ("EEOC") Office of Federal Operations issued a decision affirming the Agency's final decision.  *See* Defs.' Ex. 1, EEOC Appellate Decision (concluding that "the Administrative Judge's issuance of a decision without a hearing was appropriate, and the preponderance of the evidence of record does not establish that discrimination occurred").

---

[1] Electronic Certification Systems

Plaintiff initiated a civil action in this Court on May 9, 2003.  In addition to the claims described above, plaintiff's complaint levels numerous allegations against various employees of the USMS and the EEOC, including claims that the named USMS employees submitted false testimony and accusations in the administrative proceedings, Compl. ¶ 1, that the ALJ accepted "inadmissible and untimely" documents and "engaged in countless acts of bias" and "unethical behavior" in the processing of plaintiff's EEO complaint, *id.* ¶¶ 2-3, 11, that defendants failed to provide plaintiff timely counseling, *id.* ¶¶ 7, 16-19, that defendants created "bogus promotional guidelines" applicable only to plaintiff, *id.* ¶ 5, that only white and female employees received special entitlement pay and formal training, *id.* ¶¶ 8, 10, 13, that plaintiff's office location was a fire hazard, *id.* ¶ 9, and that he and his family suffered undue stress "associated with continually having to address" the alleged discriminatory practices.  *Id.* ¶ 20.  The complaint concludes with a prayer for damages in excess of $48 million plus fees and costs for violations of the "Civil Rights Act, U.S. Disabilities Act, Rehabilitation Act, Fair Labor Standards Act, Equal Pay Act, EEOC, and USMS regulates" [sic].

## II. DISCUSSION

### A.  Exhaustion of Administrative Remedies

Title VII and the Rehab Act provide the exclusive judicial remedies for claims of discrimination on the basis of race or disability in federal employment.  42 U.S.C. § 2000e-16(a); 29

U.S.C. § 794a(a); *see Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 829 (1976)(holding that Congress intended Title VII to be the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination"). Accordingly, plaintiff's claims based on violations of statutes other than Title VII and the Rehab Act must be **DISMISSED**.[2]

Furthermore, the claims before this Court are limited to those properly exhausted pursuant to those statutory frameworks. *See Brown*, 425 U.S. at 832-33; *Bayer v. United States Dep't of Treasury*, 956 F.2d 330, 332 (D.C. Cir. 1992). As explained above, plaintiff's administrative claims before the EEOC were limited to plaintiff's allegations based on failure to promote, denial of training, placement on a performance improvement plan, and denial of overtime. *See* Defs.' Ex. 1, ALJ Decision at 2. Accordingly, plaintiff's claims based upon theories that did not appear in the administrative complaint must also be **DISMISSED.** *See Miller v. Smith*, 584 F. Supp. 149, 154 (D.D.C. 1984)(dismissing, on exhaustion grounds, Title VII claim alleging discrimination based on race where administrative complaint alleged only discrimination based on sex).

Finally, plaintiff's claims relating to the *processing* of his administrative claim before the EEOC must also be **DISMISSED**

---

[2] Moreover, even assuming Title VII and the Rehab Act were not the exclusive remedies available to plaintiff, it appears that plaintiff's complaint fails to state a claim under either the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, or the Equal Pay Act, 29 U.S.C. § 206(d). *See* Defs'. Partial Mot. To Dismiss at 18-21.

4

because plaintiff's dissatisfaction with the EEO administrative process does not provide the basis for either a separate EEO claim or a federal claim of discrimination.  *See* 29 C.F.R. § 1614.107(a)(8)(federal agency "shall dismiss" a complaint that "alleges dissatisfaction with the processing of a previously filed complaint"); *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990), *aff'd*, 946 F.2d 1568 (D.C. Cir. 1991).  The "right" to be free of discrimination is "wholly preserved, even if the EEOC errs in its processing of the charge, by the right to a trial *de novo*."  *Packer v. Garnett*, 735 F. Supp. 8, 9-10 (D.D.C. 1990), *aff'd* 959 F. 2d 1102 (D.C. Cir. 1992).

    **B.**    **Adverse Employment Action**

In order to maintain a claim under Title VII or the Rehab Act, a plaintiff must demonstrate that she has suffered "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999).  Of plaintiff's four remaining claims, only two appear to state adverse actions.  Specifically, plaintiff's claims that (1) his request to attend ECS training was denied in June 1998; and that (2) he was placed on a 120-day Performance Improvement Plan ("PIP") in July 1998 fail to state adverse actions.

While the denial of training can state an adverse employment action in certain circumstances, *see* 42 U.S.C. § 2000e-2(d)

5

(barring employers from discriminating in "admission to, or employment in, any program established to provide apprenticeship or other training"), the record in this case does not support plaintiff's claim. *See* Defs.' Ex. 1, ALJ Decision at 4 (noting that plaintiff actually received more training, both in terms of the numbers of courses taken and in terms of cost to the USMS, than some of his coworkers). Furthermore, it appears that the USMS had a policy to separate the functions of accounts payable staff, such as plaintiff, and ECS certifying officers in order to avoid any potential conflict of interest or fraud. *See id.* at 5. Because *none* of the USMS employees working in plaintiff's area were allowed to take ECS training, there can be no inference of discriminatory treatment here. *See Freedman v. MCI Telecommunications*, 255 F.3d 840, 845 (D.C. Cir. 2001)(finding "insufficient evidence to demonstrate that [plaintiff] was treated differently than his peers"). Finally, because plaintiff does not allege that his placement on a PIP led to any significant change in his employment status, such as an effect on his grade or salary, that claim also fails to state an adverse employment action. *See Taylor v. Small*, 350 F.3d 1286, 1292-93 (D.C. Cir. 2003).

### III. CONCLUSION

The foregoing analysis demonstrates that plaintiff has only exhausted his administrative remedies and stated adverse employment actions with respect to (1) plaintiff's claim concerning his non-selection for promotion to GS-9 in June of

1998; and (2) plaintiff's claim concerning the denial of several hours of overtime in August of 1998.  Accordingly, defendants' motion is **GRANTED** and the remainder of the claims and allegations in plaintiff's complaint are hereby **DISMISSED WITH PREJUDICE**. Plaintiff is further advised that because his claims arise only under Title VII and the Rehab Act, his remedies are limited by the statutory maximum allowed under those statutes.  Thus, any award of compensatory damages will be subject to and limited by 42 U.S.C. § 1981a(b)(3).


**Signed:     Emmet G. Sullivan**
**             United States District Judge**
**             July 15, 2005**