## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES O. BOLDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | )   Civil Action No. 03-1030 (EGS) |
| v. | ) |
| | ) |
| JOHN ASHCROFT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

James Bolden alleges that the United States Marshals Service ("USMS") discriminated against him on the basis of his race, gender, and disability when the USMS denied him a promotion from the GS-7 to the GS-9 level in June 1998 and denied his request to work eight hours of overtime in August 1998.[1]  Pending before the Court is defendants' Motion for Summary Judgment and plaintiff's Cross Motion for Summary Judgment and Leave to Amend/Reconsideration.  Upon consideration of the motions, responses and replies thereto, applicable law, and the entire record, the Court **grants** defendants' motion and **denies** plaintiff's motion.

---

[1] Although plaintiff makes a number of other allegations in his pleadings, as discussed in this Memorandum Opinion, only these two allegations are still at issue in this case.

I.    **BACKGROUND**

The Court previously detailed the factual background of this case in its July 15, 2005 Memorandum Opinion and Order.  *See Bolden v. Ashcroft*, Civ. A. No. 03-1030 (EGS) (D.D.C. July 15, 2005) (Dkt. No. 50) ("July 2005 Order").  A brief summary of the facts pertinent to the pending motions is included below.

Pro se plaintiff James Bolden filed a complaint in this Court on May 9, 2003 against the USMS seeking in excess of $48 million plus costs and fees for alleged violations of Title VII, the Rehabilitation Act, the Fair Labor Standards Act, the Equal Pay Act, and Equal Employment Opportunity Commission ("EEOC") and USMS regulations.  In its July 2005 Order, this Court dismissed almost all of plaintiff's allegations, allowing only two claims to go forward: (1) plaintiff's claim concerning his non-selection for promotion in June 1998; and (2) plaintiff's claim concerning the denial of his request for overtime in August 1998.  This Court held that plaintiff's other claims either were not administratively exhausted or did not constitute adverse employment actions.

As to the two claims that survived, plaintiff first claims that defendants discriminated against him based on his race, gender, and disability because the USMS did not promote plaintiff, a System Accountant, from a GS-7, step 7 level to a GS-9 level.  Plaintiff alleges that two other System Accountants,

Jared Martin (White male) and LaJuan Prince Williams (Black female) received promotions in June 1998 after receiving the same "acceptable" performance rating as plaintiff.

Plaintiff also claims that defendants discriminated against him based on his race and gender when his supervisor denied his request to work eight hours of overtime in August 1998. Plaintiff alleges that other System Accountants, Jared Martin (White male) and Joanne Choi (Asian female), were allowed to work hundreds and/or thousands of hours of overtime while plaintiff's request for overtime was denied.

## II.  DISCUSSION

### A.    Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  *See Celotex*, 477 U.S. at 323.

In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v.*

3

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  Moreover, if the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

Although summary judgment "must be approached with specific caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial."  *Morgan v. Fed. Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001), *aff'd*, 328 F.3d 647 (D.C. Cir. 2003) (citations omitted); *see also Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (noting that special caution "does not eliminate the use of summary judgment in discrimination cases") (citing cases).  The Court views summary judgment motions in discrimination cases with the appropriate caution, but the Court cannot overlook a plaintiff's failure to submit evidence that creates a genuine factual dispute or entitlement to judgment as a matter of law.  *See Wada v. Tomlinson*, Civ. A. No. 03-1488 (CKK),

4

2007 U.S. Dist. LEXIS 34010, at *93 (D.D.C. May 9, 2007) (finding that even though the "special standard" applied to motions for summary judgment in employment discrimination cases is "more exacting, it is not inherently preclusive" of a grant of summary judgment in favor of defendants).

B.   ***McDonnell Douglas* Framework**

Plaintiff claims discrimination under Title VII and the Rehabilitation Act.  Title VII makes it unlawful for a federal government employer to discriminate "based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a). The Rehabilitation Act provides that "no otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability."  29 U.S.C. § 794(a).

Where there is no direct evidence of discrimination, the Court applies the *McDonnell Douglas* burden-shifting framework under which the plaintiff must first establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[2]  If the plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant employer "to

---

[2] Disability discrimination claims brought pursuant to the Rehabilitation Act are subject to the same *McDonnell Douglas* burden-shifting standard as Title VII claims.  *See Rosell v. Kelliher*, 468 F. Supp. 2d 39, 44 (D.D.C. 2006).  Accordingly, the Court analyzes all discrimination claims together.

articulate some legitimate, non-discriminatory reason" for the employment action and offer credible evidence supporting its claim.  *Id.*  Defendant only has the burden of production and "need not persuade the court that it was actually motivated by the proffered reasons."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 881 (2003).

In most cases, to make out a *prima facie* case of discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he has suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  *See Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007); *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002).  In certain circumstances, however, the D.C. Circuit has found that "'the traditional *McDonnell Douglas* test does not fit'" and the Court therefore "'adjust[s] the *McDonnell* formula to ask whether a similarly situated person . . . requested and received the benefit [plaintiff] sought.'"  *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003) (quoting *Cones v. Shalala*, 199 F.3d 512, 517 (D.C. Cir. 2000)).

6

C.    **Failure to Promote**

Plaintiff alleges discrimination on account of his race, sex, and disability based on the USMS's failure to promote him from the GS-7, step 7 level to the GS-9 level in June 1998. Plaintiff claims that he met the requirements to receive a career promotion to a GS-9 level but was denied that promotion.

In *Taylor*, 350 F.3d at 1294, the D.C. Circuit faced an almost identical case to this one where a plaintiff claimed discrimination based on the failure to increase her grade or salary.  The Circuit found that the traditional *McDonnell Douglas* test "does not fit" such a case.  *Id*. (internal quotation marks and citations omitted).  Instead, the Circuit held that in order to make out a *prima facie* case of discriminatory refusal to promote in a case where plaintiff is only claiming entitlement to an increase in pay or grade based on current responsibilities rather than promotion to a vacant position, "the plaintiff must show that she sought and was denied a promotion for which she was qualified, and that 'other employees of similar qualifications . . . were indeed promoted at the time the plaintiff's request for promotion was denied.'" *Id*. (quoting  *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981)).

Defendants argue that plaintiff cannot make out a *prima facie* case of discrimination because plaintiff was neither qualified for a career promotion to the next higher grade level

7

nor can he point to similarly situated employees who were promoted when he was not.  Although the Court finds that there is a material factual dispute as to whether plaintiff was in fact qualified for a promotion, plaintiff's non-promotion claim fails because he cannot point to a single employee of similar qualifications who received a career promotion to the next grade level when his career promotion was denied.

According to the USMS manual, "[c]areer promotions are not automatic, and service of the required time in grade does not entitle one to promotion to the next higher grade."  USMS Manual at ¶ 3.9-2a(2), Ex. A to Defs.' Mot. for Summ. J.  The Manual further provides that "[c]areer promotions can be withheld from those employees who meet time-in-grade requirements but fail to meet performance requirements."  *Id.* at ¶ 3.9-3a(3).  Defendants do not dispute that plaintiff met the time in grade – one year – to be eligible for a promotion.  They do dispute, however, that plaintiff was meeting performance requirements.  Specifically, defendants argue that plaintiff failed to meet the performance requirements for a promotion to a GS-9 because he was counseled several times regarding his work by his second-level supervisor, he failed to develop a spreadsheet to compile data for Visa cardholders, and he made errors in obligating funds.  *See* Joseph Ilk Aff. at 2-3, Ex. B to Defs.' Mot. for Summ J.  However, Plaintiff's rating official Joseph Ilk gave plaintiff an

"acceptable" performance rating on his June 1998 performance evaluation on a binary scale of "acceptable" or "unacceptable." The "acceptable" performance rating seems to contradict the defendants' contention that plaintiff was not meeting performance requirements.  The USMS's directions for completing the performance plan and rating form defines the term "acceptable" both for critical elements and on an overall basis as follows:

> Acceptable means performance on this element is generally solid and effective, and may, at times, be of an unusually high quality.  The quality and quantity of the employee's work under this element are those of a competent employee.  Performance represents a level of accomplishment expected of the great majority of employees.  Work products/results typically meet, and often exceed, the requirements established for quality, quantity, and timeliness.  Employee's work activities and products support the organization's accomplishment of established goals/objectives.  Work performed as a member of a team supports team accomplishment of work effort.  Employee successfully completes individual work responsibilities and often completes special assignments without disruption of individual work. Supervisory assistance is sometimes necessary to handle routine problems; however, the employee is usually able to handle problems independently.

Directions for Completing Performance Plan & Rating Form, USMS Form 540, Ex. 10 to Pl.'s Cross Mot. for Summ. J.  Given this definition, plaintiff's "acceptable" performance ratings on his performance evaluation creates a factual dispute as to whether he was meeting performance requirements when denied a promotion. This factual dispute, however, is not fatal to defendants' motion for summary judgment as plaintiff cannot satisfy the second half of the *prima facie* test laid out in *Taylor*.

Plaintiff cannot show in this case that other employees of
similar qualifications outside any of his claimed protected
classes were promoted at the time his request for promotion was
denied.  "To be similarly situated, plaintiff must establish that
his employment situation was similar in all relevant regards to
those with whom he seeks comparison."  *Nurridin v. Goldin*, 382 F.
Supp. 2d 79, 97 (D.D.C. 2005); *see also Holbrook v. Reno*, 196
F.3d 255, 261 (D.C. Cir. 1999) ("A plaintiff . . . must
demonstrate that all of the relevant aspects of [his] employment
situation were nearly identical to those" of his comparables.).
Plaintiff points to two individuals that he claims were similarly
situated to him and were promoted when he was not – Jared Martin
and LaJuan Prince Williams.  Neither Martin nor Williams,
however, are comparable to plaintiff.  Although plaintiff,
Williams, and Martin appear to be similar in that they all had
the title of System Accountant, the similarity ends there.  At
the time grade promotion decisions were made, plaintiff worked
for the Financial Operations Team while Martin and Williams
worked for the Financial Reports and District Affairs Team.  *See*
Def.'s Statement of Material Facts at ¶¶ 2, 5, 8.  Plaintiff was
rated by Joseph Ilk at the time of his non-promotion, whereas
Martin and Williams were rated by Robert Whitley.  *Id.* at ¶¶ 3,
6, 9.  Plaintiff was a GS-7 at the time of his non-promotion and
Martin and Williams were both GS-11s when they were promoted to a

higher salary grade.  *Id.* at ¶¶ 1, 4, 7.  Although plaintiff attaches a number of exhibits to his opposition to defendants' motion for summary judgment in an effort to show that he was similarly situated to Martin and Williams, the evidence attached either does not support his arguments or fails to contradict the key differences pointed to by defendants between him and his alleged comparators.  Plaintiff has not shown with the evidence he submitted to the Court that he, Williams, and Martin are similar in all relevant respects.  Because there is no evidence before the Court of any similarly situated employees who were promoted to a higher salary grade when plaintiff was denied a promotion, plaintiff cannot establish a *prima facie* case of discriminatory failure to promote.  Accordingly, the Court grants defendants' motion for summary judgment and denies plaintiff's cross motion for summary judgment as to this claim.

**D.   Denial of Overtime**

In his complaint, plaintiff alleges generally that Jared Martin (White male) and Joanne Choi (Asian female) worked hundreds and/or thousands of hours of overtime while plaintiff only worked 73 hours of overtime during his entire time of employment.  As this Court already indicated in its July 15, 2005 Memorandum Opinion and Order, the narrow issue that was administratively exhausted and therefore properly before this Court is whether or not the denial of plaintiff's August 1998

request for several hours of overtime was discriminatory in light of the grant of overtime to other employees.

Defendants do not dispute that plaintiff can meet the first two prongs of the standard *McDonnell Douglas* test to establish a *prima facie* case.  Plaintiff is a member of several protected classes and, as this Court already held in July 2005, the denial of overtime constitutes an adverse employment action.  Defendants argue, however, that plaintiff cannot meet the third prong of his *prima facie* case with respect to the denial of overtime and defendants had a legitimate reason for denying him overtime regardless of whether he can make out a *prima facie* case.  Therefore, the issue before the Court is whether USMS's denial of plaintiff's overtime gives rise to an inference of discrimination or, more broadly, whether plaintiff can show that a reasonable jury could conclude from all the evidence that USMS denied plaintiff's overtime request for a discriminatory reason.

Once an employer meets it burden of articulating and providing evidence to support a legitimate, non-discriminatory reason for its employment decision, "it has 'done everything that would be required of [it] if the plaintiff had properly made out a prima facie case.'"  *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).  Accordingly, "the McDonnell Douglas framework -- with its presumptions and burdens --

12

disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). Thereafter, "'to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason.'" *Czekalski*, 475 F.3d at 363 (quoting *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003)). The evidence the Court considers in reaching that determination is (1) plaintiff's *prima facie* case; (2) "any evidence the plaintiff presents to attack the employer's proffered explanations for its actions"; (3) "any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment)." *Id*. at 363-64 (quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc)).

In this case, defendants have offered a legitimate, nondiscriminatory reason for denying plaintiff's overtime – that the project to which he was assigned to did not warrant overtime. Accordingly, the Court examines the *prima facie* case only to the extent that it helps determine the ultimate question of whether plaintiff has created a genuine issue of discrimination that

should get to a jury.  As discussed above, only the third prong of the *prima facie* test is at issue.  One way a plaintiff can satisfy the third prong of the *prima facie* test is to show that he was treated differently than similarly situated employees who are not part of his protected class.  *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005).  This is not the only way, however. *Id*.  The kinds of evidence sufficient to demonstrate an inference of discrimination in different contexts have expanded in recent Circuit precedent.  *See, e.g., George*, 407 F.3d at 412; *Czekalski*, 475 F.3d at 365-66.

Plaintiff has not provided evidence to suggest that he is similarly situated to the employees he claims received hundreds and/or thousands of hours of overtime when plaintiff was only approved for 73 hours of overtime.  Martin and Choi, plaintiffs' alleged comparators, were GS-11 and GS-12 System Accountants working on the Financial Reports and District Affairs Team, whereas plaintiff was a GS-7 System Accountant on the Financial Operations Team.  Moreover, these two individuals reported to different supervisors than plaintiff and their performance appraisals were completed by different individuals.  As such, Martin and Choi were not similarly situated to plaintiff at the time his request for overtime was denied.  Plaintiff also has not pointed to any other evidence from which this Court could infer discrimination.

14

USMS's proffered explanation for denying plaintiff's request to work eight hours of overtime on August 31, 1998 is that the task for which the overtime was requested did not require eight hours to complete.  In an email to plaintiff on August 31, 2008, plaintiff's supervisor Joseph Ilk indicated that the assigned project should only take one to two hours to complete and that the current workload for the week in question was manageable so plaintiff could complete the project during his normal work hours.  *See* Email from Joseph Ilk to James Bolden (Aug. 31, 1998), Ex. H to Defs.' Mot. for Summ. J.  Accordingly, Ilk denied plaintiff's overtime request.  Plaintiff has pointed to no evidence that suggests that this proffered reason for the denial of overtime was false or unworthy of credence.  *See Czekalski*, 475 F.3d at 366 (citing cases).  Plaintiff has offered no evidence that the task he was working on in August 1998 could not be completed during a normal workweek or that the assignment would take more than 1-2 hours based on complexity or some other reason.  Instead, plaintiff only generally alleges that the disparity in overtime hours between him and his counterparts who were at higher grade levels, worked on different teams, and were supervised by different individuals "was a blatant injustice and confirms and constitutes [overtime] discrimination."  Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 4, ¶ 3.

Finally, plaintiff has not pointed to any other evidence from which a reasonable jury could find discrimination based on the denial of his request for overtime.  Plaintiff was approved for overtime on 22 occasions prior to this denial for a total of 73.5 hours of overtime between March and August 1998.  *See* Bolden Overtime Spreadsheet, Ex. G to Defs.' Mot. for Summ. J. Plaintiff also provides no evidence of discriminatory statements or attitudes on the part of his employer.  *See Aka*, 156 F.3d at 1289.

When all the evidence is viewed together, it is not clear that plaintiff can even establish a *prima facie* case, and he has offered no evidence to counter defendants' legitimate, nondiscriminatory reason for denying him overtime nor has he shown that Ilk's reason for denying him overtime was a pretext for discrimination.  Plaintiff also has pointed to no further evidence from which a reasonable jury could find that the denial of overtime was for a discriminatory reason.  As such, the Court grants defendants' motion for summary judgment and denies plaintiff's cross motion with respect to the denial of overtime claim.

### E.   Motion for Reconsideration

In July 2005, this Court dismissed all of plaintiff's claims save for his claims concerning (1) his non-promotion to a GS-9 in June 1998 and (2) the denial of his overtime request in August

1998.  Despite dismissing the remaining claims for either failure
to exhaust or failure to allege an adverse employment action,
plaintiff again raises the dismissed claims in his Cross Motion
for Summary Judgment and Leave to Amend/Reconsideration.
Specifically, plaintiff seeks reconsideration of the following
claims: (1) plaintiff's placement on a performance improvement
plan ("PIP"); (2) endangerment of plaintiff's health, safety, and
life because his office violated fire and building codes; (3)
constructive termination; and (4) denial of training.  *See* Pl.'s
Cross Mot. for Summ. J. and Leave to Amend/Reconsideration at
¶¶ 3, 4, 5, and 7.  Plaintiff's claims for constructive
termination and a dangerous office were dismissed for failure to
exhaust administrative remedies and plaintiff's claims related to
the PIP and denial of training were dismissed for failure to
allege an adverse employment action.

The Court's July 2005 Memorandum Opinion and Order was not a
final judgment.  Accordingly, Federal Rule of Civil Procedure
54(b) governs his request for reconsideration.  *See, e.g., Moore
v. Hartman*, 332 F. Supp. 2d 252, 256-57 (D.D.C. 2004) (explaining
that Rule 54(b) governs interlocutory orders).  Rule 54(b) allows
for revision "as justice requires" of "any order or other form of
decision, however designated, that adjudicates fewer than all the
claims or the rights and liabilities of fewer than all the
parties."  Fed. R. Civ. P. 54(b); *Cobell v. Norton*, 224 F.R.D.

266, 272 (D.D.C. 2004).  On review of an interlocutory order, the Court generally will deny a motion for reconsideration unless the moving party can point to "controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court."  *Id*. (internal quotation marks and citations omitted).

Plaintiff has not provided the Court with evidence of any intervening change in law or any new facts that would require the Court to reconsider its decision to dismiss his claims for life endangerment and constructive termination.  Plaintiff presents no evidence that either of these claims were exhausted at the administrative level.  As for plaintiff's claims related to his placement on a PIP and denial of training, this Court previously held in July 2005 that plaintiff failed to show an adverse employment action with respect to these claims.  Plaintiff has presented no new cases or facts that cause the Court to question its original decision.  Accordingly, plaintiff's motion is denied to the extent that it seeks reconsideration of the Court's July 2005 Memorandum Opinion and Order.

## F.    Motion for Leave to Amend

In his Cross Motion for Summary Judgment and Leave to Amend/ Reconsideration, plaintiff seeks leave to amend his complaint to include alleged violations of the Equal Pay Act, Fair Labor Standards Act ("FLSA"), and Americans with Disabilities Act

("ADA").  It is well-settled that the Court may deny a motion to amend a complaint when such amendment would be futile.  *See, e.g., Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996).  The inability of the proposed claims to survive a motion to dismiss provides a valid ground for denying a motion to amend the complaint.  *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile, as the district court did here, if the proposed claim would not survive a motion to dismiss.").  In this case, the Court denies plaintiff's motion because none of the proposed claims could survive a motion to dismiss.

### 1.  Equal Pay Act

In his motion, plaintiff only makes specific reference to the Equal Pay Act when alleging that defendants hired less experienced and less knowledgeable workers at a GS-9 when he was hired at only a GS-7.  *See* Pl.'s Cross Mot. for Summ. J. and Leave to Amend/Reconsideration at 10, ¶ 8.  Because this Court does not have subject matter jurisdiction over plaintiff's Equal Pay Act claim, this claim could not possibly survive a motion to dismiss.

The Equal Pay Act prohibits employers from differentiating on the basis of sex by paying employees of one sex lower wages than employees of the other sex for performing a job requiring equal skill, effort, and responsibility, under similar working

conditions.  29 U.S.C. § 206(d).  Claims brought pursuant to the
Equal Pay Act must satisfy the jurisdictional requirements of the
Tucker Act, 28 U.S.C. § 1491, or the Little Tucker Act, 28 U.S.C.
§ 1346(a)(2).  The Tucker Act provides that the Court of Federal
Claims has "jurisdiction to render judgment upon any claim
against the United States founded either upon the Constitution,
or any Act of Congress . . . not sounding in tort." 28 U.S.C.
§ 1491(a)(1).  The Little Tucker Act provides that district
courts have concurrent jurisdiction over non-tort civil actions
against the United States, "not exceeding $ 10,000 in amount,
founded either upon the Constitution, or any Act of Congress, or
any regulation of an executive department . . . ."  28 U.S.C.
§ 1346(a)(2).  For any claim exceeding $10,000, jurisdiction lies
exclusively in the Court of Federal Claims.  *See Powell v.
Castaneda*, 390 F. Supp. 2d 1, 7 (D.D.C. 2005) (holding that the
district court lacked subject matter jurisdiction over
plaintiff's Equal Pay Act claims, which sought more than $10,000
in damages).

Plaintiff's Equal Pay Act claim fails because this Court
does not have jurisdiction over the claim.  Plaintiff is seeking,
at a minimum $300,000 in damages and possibly as much as $1
million, *see* Pl.'s Cross Mot. for Summ. J. and Leave to
Amend/Reconsideration at 11.  His claimed damages far exceed the
$10,000 limit.  As such, this Court lacks subject-matter

jurisdiction.  *See Powell*, 390 F. Supp. 2d at 7.  Because this Court does not have subject matter jurisdiction, the Court denies plaintiff's motion to the extent he wants to amend his complaint to add an Equal Pay Act claim.

### 2.   Fair Labor Standards Act

Although plaintiff does not specify which of his claims are Fair Labor Standards Act claims, none of the eight paragraphs of allegations that he includes in his Cross Motion for Summary Judgment and Leave to Amend/Reconsideration could survive a motion to dismiss.  Accordingly, the Court denies plaintiff's leave to amend to add such FLSA claims.

The FLSA generally governs claims for denial of either minimum wage or overtime pay.  *See* 29 U.S.C. § 201 *et seq*. Claims brought against the United States pursuant to the Fair Labor Standards Act are limited by either a two-year or three-year statute of limitations depending on whether a particular FLSA violation is deemed willful.  29 U.S.C. § 255(a); 29 C.F.R. § 790.21.  Even assuming that plaintiff could state a claim under the FLSA, any such claim would be barred by the statute of limitations.  Plaintiff does not allege any wrongful conduct beyond August 1998, almost five years before he filed his complaint in this Court.  Moreover, plaintiff does not allege that his employer denied him the minimum wage required by statute.  With respect to his overtime claims, plaintiff only

alleges that his employer denied him the ability to work overtime hours, not that he was not compensated for the overtime when worked.  As plaintiff does not appear to be able to state a FLSA claim at all and even if he could it would be barred by the statute of limitations, the Court denies plaintiff's motion to amend to add a FLSA claim.

### 3.   Americans with Disabilities Act

Plaintiff's ADA claim would also not survive a motion to dismiss.  As such, allowing amendment to assert such a claim would be futile.

The ADA explicitly exempts the federal government from coverage.  Section 12111(50(B)(ii) specifies that the term "employer" as used in the ADA does not include "the United States government, a corporation wholly owned by the government of the United States, or an Indian tribe."  42 U.S.C. § 12111(5)(B)(ii); *see also Bramwell v. Blakey*, Civ. A. No. 04-927, 2006 U.S. Dist. LEXIS 32728, at *1 n.2 (D.D.C. May 24, 2006) ("[T]he ADA does not apply to federal government employees.").

Plaintiff does not dispute that the Department of Justice and USMS are federal agencies or that he was a federal employee. Accordingly, plaintiff cannot maintain an ADA claim against these federal defendants.  Allowing amendment of plaintiff's complaint to assert an ADA claim would be futile.  Accordingly, the Court

denies plaintiff's motion to the extent he seeks to amend his complaint to assert an ADA claim.

## III. CONCLUSION

For the foregoing reasons, the Court **grants** defendants' Motion for Summary Judgment and **denies** plaintiff's Cross Motion for Summary Judgment and Leave to Amend/Reconsideration.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:**    **Emmet G. Sullivan**
          **United States District Judge**
          **September 19, 2007**